UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE NUTMEG COMPANIES, INC. | ) |
| | ) |
| v. | ) C. A. No. 303CV0615 MRK |
| | ) |
| | ) |
| JCM ASSOCIATES, INC. | ) FEBRUARY 17, 2004 |

### REPLY TO MEMORANDUM OF LAW IN SUPPORT OF APPLICATION TO VACATE ARBITRATION AWARD

This is JCM Associates, Inc.'s ("JCM") reply to the Memorandum of Law submitted in support of the application of The Nutmeg Companies, Inc. ("Nutmeg") to vacate an arbitration award entered on January 9, 2003. JCM opposes Nutmeg's application and asks the Court to confirm the arbitration award.

**Background of the Case**

JCM does not take issue with Nutmeg's presentation entitled "Background of the Case." However, JCM calls the Court's attention to the last sentence of that presentation where Nutmeg informs the Court that: "Nutmeg appeals the award for the additional bond costs and the extended home office overhead."

The arbitrator's award consisted of three awards: $4,450 for Additional Bond Costs; $36,552 for Extended Home Office Overhead and $81,106 for the balance of the contract price. As acknowledged in Nutmeg's memorandum, the parties stipulated to the contract balance of $81,106. Thus, this award is not challenged by Nutmeg. The contract balance is a significant part of the total award. Regardless of the Court's decision, the contract balance is

not at issue. JCM requests that the Court order Nutmeg to confirm the arbitration award as it relates to the contract balance.

**Standard of Review**

Nutmeg presents the Court with a reasoned overview of the severe constrains placed on this Court when it considers an application to vacate an arbitration award. JCM agrees that in order for Nutmeg to prevail it must persuade the Court that the arbitrator in making his decision "manifestly disregarded the law."

However, Nutmeg's analysis of the standard of review for reaching a determination that the arbitrator manifestly disregarded the law, falls far short of that established by the 2nd Circuit and similar cases decided by this Court. For whatever reason, Nutmeg totally ignores recent explicit guidance from the 2nd Circuit in <u>Duferco International Steel Trading V. T. Klaveness Shipping A/S</u> 333 F.3d 383 (2d Cir. 2003) as to the standard of review when an application is filed to vacate an arbitration award on the basis of manifest disregard of the law.

In affirming the judgment of the district court confirming an arbitral award of legal fees, the Court in <u>Duferco</u> reiterated that "[o]ur review under the doctrine of manifest disregard is 'severely limited.' It is highly deferential to the arbitral award and obtaining judicial relief for arbitrators' manifest disregard of the law is rare." Id at 389.[1] (Citation omitted)

---

[1] In dicta, the 2nd Circuit noted that since 1960 it has vacated only four out of at least 48 cases on the basis of manifest disregard of the law. Of those 4, the court opined that in all four cases, except Halligan, vacatur would have probably been warranted under the FAA such that there was not need to find that the arbitrator acted in manifest disregard of the law. Id at 389

The court in <u>Duferco</u> set forth a three-step process for the application of the doctrine of manifest disregard of the law which is worth restating in full:

> "Perhaps because we so infrequently find manifest disregard, its precise boundaries are ill defined, although its rough contours are well known. See *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933 (2d Cir. 1986). We know that it is more than a simple error in law or a failure by the arbitrators to understand or apply it; and, it is more than an erroneous interpretation of the law. See *Westerbeke,* 304 F.3d at 208; see also *Folkways Music Publishers., Inc. v. Weiss,* 989 F.2d 108, 111 (2d Cir. 1993). A party seeking vacatur bears the burden of proving that the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it. *Merrill Lynch,* 808 F.2d at 933; see also *Greenberg v. Bear, Stearns & Co.,* 220 F.3d 22, 28 (2d Cir. 2000), cert. denied, *531 U.S. 1075, 148 L. Ed. 2d 669, 121 S. Ct. 770 (2001).*
>
> The above principles, by extension, lead us to infer that the application of the manifest disregard standard involves at least three inquiries. <u>First, we must consider whether the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators.</u> See *Westerbeke,* 304 F.3d at 209; *Merrill Lynch,* 808 F.2d at 934. An arbitrator obviously cannot be said to disregard a law that is unclear or not clearly applicable. Thus, misapplication of an ambiguous law does not constitute manifest disregard.
>
> <u>Second, once it is determined that the law is clear and plainly applicable, we must find that the law was in fact improperly applied, leading to an erroneous outcome. We will, of course, not vacate an arbitral award for an erroneous application of the law if a proper application of law would have yielded the same result. In the same vein, where an arbitral award contains more than one plausible reading, manifest disregard cannot be found if at least one of the readings yields a legally correct justification for the outcome.</u> See *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.,* 103 F.3d 9, 13 (2d Cir. 1997) (citing *Matter of Andros Compania Maritima, S.A. of Kissavos,* 579 F.2d 691, 704 (2d Cir. 1978)). Even where explanation for an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case. *Sobel v. Hertz, Warner & Co.,* 469 F.2d 1211, 1216 (2d Cir. 1972); see also *Siegel v. Titan Indus. Corp.,* 779 F.2d 891, 893-95 (2d Cir. 1985) (per curiam).

<u>Third, once the first two inquiries are satisfied, we look to a subjective element, that is, the knowledge actually possessed by the arbitrators. In order to intentionally disregard the law, the arbitrator must have known of its existence, and its applicability to the problem before him.</u> *Merrill Lynch, 808 F.2d at 933.* In determining an arbitrator's awareness of the law, we impute only knowledge of governing law identified by the parties to the arbitration. *DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 823 (2d Cir. 1997),* cert. denied, *522 U.S. 1049, 139 L. Ed. 2d 639, 118 S. Ct. 695 (1998).* Absent this, we will infer knowledge and intentionality on the part of the arbitrator only if we find an error that is so obvious that it would be instantly perceived as such by the average person qualified to serve as an arbitrator. *Merrill Lynch, 808 F.2d at 933.* We undertake such a lenient subjective inquiry in recognition of the reality that arbitrators often are chosen for reasons other than their knowledge of applicable law, and that it is often more important to the parties to have trustworthy arbitrators with expertise regarding the commercial aspects of the dispute before them. See *Goldman, 306 F.3d at 1216." Id* at 389 (Emphasis Added)

In another case decided soon after <u>Duferco</u> further guidance is provided as to the standard of review for a finding of manifest disregard of the law. In <u>Richard Hoeft, Iii, V. MVL Group, Inc.</u> *343 F.3d 57; 2003 U.S. App. LEXIS 18166 (2nd Cir. 2003)* the Court considered "one of those rare cases in which a district court vacated an arbitration award because of the arbitrator's manifest disregard of the law." The Court reversed the judgment of the District Court vacating the arbitration award. In Citing <u>Duferco</u> the court concluded that even though the position of the losing party "may represent a clear majority view is of no consequence. See <u>Duferco</u>, *333 F.3d at 391* (stating that 'even a 'barely colorable' justification for the outcome reached will save an arbitral award (citation omitted). <u>As long as there is more than one reasonable interpretation of the governing law, the law is not well-defined, explicit,</u>

LAW OFFICES • **FUREY, DONOVAN, EDDY, KOCSIS, TRACY & DALY, P.C.**
43 BELLEVUE AVENUE • P. O. BOX 670 • BRISTOL, CT. 06010-0670 • (203) 589-4343 • JURIS NO. 21150

<u>and clearly applicable, and an arbitrator cannot be said to have manifestly disregarded the law in rejecting either party's interpretation.</u>" *Id* at 71.  (Emphasis Added)

**Award of Bond Costs**

Nutmeg claims that there was no justification for the award of bond costs.  In support of its claim, Nutmeg asserts it is entitled to have this part of the award vacated because: 1) the arbitrator did not clarify the basis of his award of bond costs, 2) that some of the facts presented to the arbitrator do not support the arbitrator's award, 3) that Nutmeg's mathematical calculations do not support the arbitrator's award and 4) that JCM did not provide an invoice for the bond premium at the close of the hearing.

In its Memorandum, Nutmeg has not satisfied any of the three <u>Duferco</u> tests.  In order to prevail, Nutmeg is required to establish first that the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrator; then second that the law was in fact improperly applied, leading to an erroneous outcome; and then finally that the arbitrator intentionally disregarded the law.

Nutmeg has not made reference to any law which is controlling or applicable to the arbitrator's determination that JCM was or was not entitled to increased bond costs or as to the method used to calculate increased bond cost.  Nutmeg disagrees with the arbitrator's decision and extracts snippets from the six day record that are favorable to its position.  This is wholly inadequate under <u>Duferco</u> and, for that matter, all of the other decisions of the 2nd circuit that have reviewed the standards for manifest disregard of the law.  Nutmeg has not met its burden in any respect.

Performance and payment bonds were a contractual requirement of JCM's contract with Nutmeg. The cost for the contractually required bonds is dependant upon the amount of the contract and the time the bond is in place.

JCM presented evidence that it paid $19,200 for bonds. In its bid JCM estimated bond costs of $13,000. Therefore, JCM requested an award of $6,200 in allowable increased bond costs. In its post hearing brief (Exhibit 10 at page 22), Nutmeg argued that the bond costs should be reduced by $1,750. In fact, the arbitrator did reduce JCM's claim by this exact amount. As such, Nutmeg has no complaint.

Now Nutmeg variously claims in its Memorandum that JCM is only entitled to $548.28 or $365.52. The analysis performed for the Court in its Memorandum was never provided to the arbitrator. However, the point is that Nutmeg admits that JCM is entitled to an award for increased bond costs due to the delays in completion of the project and the need for JCM to keep its bond in place.

The arbitrator awarded JCM additional bond costs based on JCM's business records which were extensively examined by Nutmeg and the arbitrator during the six days of hearings.

**Extended Home Office Overhead**

1. Federal Procurement Law was Not Required to be Employed in Determining Whether JCM was Entitled to Delay Damages, Including Extended Home Office Overhead.

Nutmeg has withdrawn its claim "that the arbitrator's finding of 179 days of delay . . . was arbitrary and capricious." (Nutmeg Memo at p. 7). Nutmeg asserts that the Arbitrator

manifestly disregarded the law when he awarded JCM delay damages in the form of unabsorbed overhead. In an effort to persuade this Court that the arbitrator manifestly disregarded the law, Nutmeg quotes at length from federal procurement case law.

However, the arbitrator was not obligated to comply with federal procurement case law. Nutmeg has not cited any commercial law that was manifestly disregarded by the arbitrator.

In fact, counsel for Nutmeg in his post hearing brief cautioned the arbitrator:

"The cases that have been found applying Eichleay have been cases against the government, rather that the situation in the case at hand where it is subcontractor against general contractor. The issue then becomes is it the general contractor's burden to make the same showing under the second prong as would the government.

In addition, in this case we are litigating in arbitration rather than in court, which is a significant difference in that the rules of discovery which would be available under rules of the state or federal courts are not available in arbitration. The parties were asked to submit all of the exhibits they intended to present in evidence. There was no discovery in which the parties request production of documents or obtain information by interrogatory or deposition.

JCM has presented no evidence on the under the [sic] second prong of the test. Such evidence as there is under the second prong was elicited under cross examination and will be discussed under the Eichleay claim discussion. However, under the circumstances presented in this case, the burden should be with JCM to prove that it was impractical to obtain other work or that the inability to obtain other work was caused by the delay." (Exhibit 10, pg. 10)

Because this case does not involve a claim against the federal government, federal procurement law should not apply. The issue is whether the decision of the arbitrator is in manifest disregard of the law as it pertains to two commercial parties. The arbitrator was

required to determine whether JCM was entitled to extended home office overhead and if so, to use an acceptable formula to calculate those damages. The former is determined by contract law, i.e., who breached the contract; is there a liquidated damages clause for delay, etc.

In <u>Southern New England Contracting Co. v. State</u>, 165 Conn. 644 (1974), the Connecticut Supreme Court determined first whether delay damages were due the plaintiff. Once it was determined that the plaintiff was so entitled, the court went on to hold that, "Home office overhead is a well-recognized item of damage for delay . . . ." <u>Id.</u> At 663. Again, in <u>M.J. Daly & Sons, Inc. v. City of West Haven</u>, (199 Conn. Super. LEXIS 2573), *affirmed* 66 Conn. App. 41 (2001), the trial court (Ripley, J.) first concerned itself with whether the plaintiff had sustained its burden of showing that the defendant City caused the alleged delays. After determining that certain delays were caused by the defendant City, the court then addressed damages, including damages for delay. It was at this point that the court stated, "Several cases in Connecticut and elsewhere have considered the question of computing damages attributable to home office costs of a construction company engaged in multiple projets on a simultaneous basis. A formula was devised to attempt to allocate such expenses to particular projects. This became popularly known as the 'Eichleay formula.' The formula was adopted but not specifically labeled as such in <u>Southern New England Contracting Co. v. State</u>," (cites omitted). ' <u>M.J. Daly</u>, Memorandum of Decision, p. 11 (attached).

In short, the arbitrator was not required to use federal procurement law in determining whether JCM was entitled to delay damages. The arbitrator had before him the contract between the parties. This set forth the rights and obligations of the parties with respect to the

project. The determination of whether JCM was entitled to delay damages was a matter of commercial contract law. Nutmeg has failed to show that the arbitrator disregarded any applicable commercial contract law. The Eichleay formula is just that: a formula. Under federal procurement law the federal courts have set criteria which must be met before the "formula" may be used. Outside of federal procurement law, the formula is an appropriate tool to quantify extended home office overhead as a result of the indeterminate and frequent delays caused by Nutmeg in the performance of the contract. Nutmeg has therefore failed to demonstrate a manifest disregard of the law in the finding that delay damages were due JCM or in employing of the Eichleay formula to calculate those damages.

2. To the Extent That Federal Procurement Law Applies in Determining Whether Delay Damages Can Be Assessed, the Arbitrator Did Not Manifestly Disregard Such Law.

Nutmeg argues that the Arbitrator's use of the phrase "reasonable approximates the damages sustained by JCM for this delay." evidences a manifest disregard of federal procurement law. Nutmeg's argument is at best a matter of semantics. It is well established that "unabsorbed overhead" is not a definitive element of cost which can be precisely determined.[2] The arbitrator's statement that "the Eichleay formula, although not perfect, reasonable approximates the damages sustained by JCM for this delay" does not evidence a

---

[2] [T]he Eichleay formula seeks to equitably determine allocation of unabsorbed overhead to allow fair compensation of a contractor for government delay.(cite omitted). Allocation based on a pro-rata share is necessary because overhead cannot be traced to any particular contract since overhead consists of expenses which benefit and are necessary to every contract." Wickham Contracting Co. v. Fischer, 12 F.3d 1574, 1578 (Fed. Cir. 1994)

LAW OFFICES • FUREY, DONOVAN, EDDY, KOCSIS, TRACY & DALY, P.C.
43 BELLEVUE AVENUE • P. O. BOX 670 • BRISTOL, CT. 06010-0670 • (203) 589-4343 • JURIS NO. 21150

manifest disregard of the law. The arbitrator was not an attorney and contrary to Nutmeg's argument cannot be expected to use precise legal language.[3]

Applying the three part Duferco test, Nutmeg is required to first establish that the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrator. To satisfy this burden, Nutmeg relies heavily on a case, P.J. Dick Incorporated v. Secretary of Veteran Affairs, 324 F.3d 1363 (Fed. Cir. 2003), which was decided on April 7, 2003 several months after the arbitrator's decision on January 9, 2003. Nutmeg's predominant reliance on P.J. Dick is an explicit admission that the law that was allegedly ignored was not clear at the time when the arbitrator made his decision.

As conspicuously evidenced by P.J. Dick, federal procurement law is not settled or clear on precisely how to determine under what circumstance the contractor is entitled to unabsorbed overhead. The law is still evolving. Each fact pattern presents a different way to look at the impact of delay on a contractor and whether or not there is entitlement to unabsorbed overhead.[4] Keeping track of the ebb and flow of Eichleay decisions over the past forty years has been an engaging experience. P.J. Dick is only the latest in this continuing saga. Further all of the law proceeds from factual situations between the government and a prime contractor or the prime's subcontractor.

---

[3] "We undertake such a lenient subjective inquiry in recognition of the reality that arbitrators often are chosen for reasons other than their knowledge of applicable law, and that it is often more important to the parties to have trustworthy arbitrators with expertise regarding the commercial aspects of the dispute before them." Duferco at 389

Now Nutmeg petitions this Court to vacate the arbitrator's award and complains that the arbitrator manifestly disregarded federal procurement law even though in its post hearing brief it informed the arbitrator that he was not obligated to follow federal procurement law.

Nutmeg has not met its burden to prove to the Court that the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrator.

Likewise, Nutmeg also fails the third test of Duferco which is the subjective element. To wit, "the knowledge actually possessed by the arbitrators. In order to intentionally disregard the law, the arbitrator must have known of its existence, and its applicability to the problem before him. Merrill Lynch, *808 F.2d at 933*. In determining an arbitrator's awareness of the law, we impute only knowledge of governing law identified by the parties to the arbitration."

**Conclusion**

Nutmeg has fallen far short of the stringent proof necessary to establish that the arbitrator's award should be vacated by this Court on the basis that the arbitrator manifestly disregarded the law. JCM requests that the Court confirm the arbitration award.

THE DEFENDANT
JCM ASSOCIATES, INC.

By *[signature]*
Christopher M. Reeves   Ct 09317
Furey, Donovan, Tracy & Daly, P.C.
43 Bellevue Avenue
P. O. Box 670
Bristol, CT 06011-0670